## Case No. 15,965.

### UNITED STATES v. ONE THOUSAND TWO HUNDRED AND NINETY-ONE BALES OF TOBACCO.

[2 Lowell, 107;[1] 14 Int. Rev. Rec. 172.]

District Court, D. Massachusetts. March, 1872.

CUSTOMS DUTIES—FORFEITURES—FORFEITABLE VALUE—RELEASE BOND.

1. An importer who, for illegality, has forfeited his goods to the United States, loses the whole value of the goods in the home market; this, whether the goods are seized before or after entry.

2. The forfeiture is the same whether the importer has given a warehousing bond, or has paid the duties, or has neglected to enter them.

3. When goods are seized in bond, the importer who wishes to have them released must stipulate for the value after the duties are paid, and not merely for their value in bond.

[This was an information containing several counts against 1,291 bales of tobacco seized while on storage in an United States bonded warehouse, and alleged to be forfeited to the government because entered by means of a false invoice, and other false and fraudulent practices and appliances, under section 1, act March 3, 1863, c. 76 (12 Stat. 737). Samuel A. Way appeared as claimant, and filed a petition that said goods might be delivered to him upon filing a bond for their appraised value, and that the appraisers might be ordered to appraise said goods at their value in the bonded warehouse, less the amount of duties payable thereon.][2]

F. W. Hurd, for the United States.
H. D. Hyde, for claimant.

LOWELL, District Judge. Imported goods having been seized in the bonded warehouse for an alleged violation of section 3 of the act of 3d March, 1863 (12 Stat. 738), the claimant applies to have them delivered to him in the warehouse, upon his filing a stipulation for value, and that the appraisers be instructed to estimate them at their market price, less the duties. The district attorney maintains that the value should be the full market price. The question has been decided differently by district judges of learning and ability, and this want of agreement will necessitate a new examination of the question. Judge Blatchford's opinion is in favor of the claimant's position. Four Cases of Silk Ribbons [Case No. 4,986]. Judges Hoffman and Cadwalader have required the bond to be for the full market value. U. S. v. Twelve Thousand Three Hundred and Forty-seven Bags of Sugar [Id. 16,555]; U. S. v. Segars [Id. 16,249].

Leaving out of view the question of a possible re-exportation of the goods, which I shall speak of later, it is very clear that an importer who has committed some fraud or illegality, by which his goods are forfeited to the United States, loses the full value of his goods at the home market, and not their value less the duties, which is a compromise between the home and the foreign value. This is admitted to be so if he has paid the duties; and he is not to be benefited by having smuggled them. The duties form part of the value here; and whether the goods are seized before or after entry, the importer is personally liable to pay the duties; and, to avoid circuity of action, section 89, Rev. St. 1799 (1 Stat. 696), requires, that, upon his giving a bond for value, he must also pay or secure the duties before receiving delivery of his goods. That section is scarcely more than declaratory of the common law; because the duties are a debt, and the government has a lien on the goods for it, and there would be an action for the amount, whichever way the suit was decided. It has, therefore, been the usual, as it is the proper, practice to appraise goods seized before entry, or before the duties are paid, at their full market value, and to require the duties to be paid besides. It is an entire fallacy to say that the importer is thus made to pay the duties twice; for they are a part of the original price, and he does not lose the goods and their price too. Take this case, where the duties are sixty per cent of the whole value. If the importer gives a stipulation for $40,000, as he asks leave to do, and then forfeits it and pays the duties, he will have lost $40,000, and not $100,000, nor $140,000; because he has received goods worth $100,000, and out of this he has paid his duties, and the forfeiture, which together are exactly that amount, and his loss is the original $40,000, which represents the prime cost abroad, and the freight and charges, but not the duties; and the government has received the duties, which it was entitled to in any event, and has then remitted an equivalent amount in favor of a fraudulent importer. The mode of appraisement which I uphold follows inevitably from the principle that the goods are subject to a duty for which the importer is personally liable, and are also subject to forfeiture if illegally imported.

No reason has been given, nor can I find any, why the importer's position should be different, if he has given a bond for the duties, from what it is if he has paid them, or neglected to enter them. Whenever they happen to be seized, his position is the same, —he must pay the duties, if he has not already done so; and if he has committed the fraud, he loses the goods, and, if not, he saves them, neither more nor less.

It is admitted that if the government holds these goods, and they are forfeited, the government will receive the full value, and collect the duties besides; but it is insisted that in that event the claimant will lose but $40,000, though the government will have gained $100,000. This is a mistake. It is impossible that the government should gain by the

---

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]
[2] [From 14 Int. Rev. Rec. 172.]

forfeiture itself more than the claimant will lose by it, or that the claimant's loss, if he is able to pay his bond for the duties, will be any less than the value of the goods which he forfeits, or that the loss will vary, excepting so far as interest on his payments is concerned, whether the duties are paid before or after the suit is decided, or before or after seizure. The value of these goods in the warehouse, as the district attorney has well shown, is $100,000, and not $40,000. A purchaser at the latter price must give satisfactory indemnity against the importer's liability for the duties; and this is, in fact, a part of the price, whatever the form of the sale may be. Such a purchaser, if the goods were forfeited, would lose $100,000, if the importer could enforce his obligation to pay the duties; but if the fraud of the importer absolved the purchaser from this, then he would lose $40,000, and the importer would lose $60,000, which together make up the $100,000. Neither more nor less, in any event, and by whomsoever borne, will be lost by the forfeiture of these goods than their exact value, unless, indeed, they are now released on a stipulation for less than their value.

If it were true in fact that the value of these goods to the owner is less than their value to the government, it would by no means follow that he should have them by giving bond for the lesser value. It is never a question in judicial controversies of value to the one party or to the other, when there is a market price; but even granting that it were, yet the government, or any one else having possession of property, and being asked to give it up, must have an equivalent. It is nothing to the plaintiff that the defendant does not estimate the property at its full market value, or that it has not cost him so much: he is entitled to that value before he surrenders it; "melior conditio possidentis."

I have considered the case thus far as if the goods were intended for home consumption; and I apprehend that they must be bonded as if they were so intended, and this for several reasons. 1. Goods that are warehoused are in fact almost always so disposed of. 2. Goods really intended for re-exportation will not be fraudulently imported, unless in connection with some allied domestic fraud; because there is no motive to commit any fraud in that case. 3. If the rare and improbable case should happen of a fraud, real or suspected, in the importation of such goods, the rule still holds that the owner should give an equivalent for what he receives; and, theoretically, he loses nothing by the application of the rule, because he obtains goods for their exact value. Practically, he may be obliged to make a larger investment than he had intended. But we must have a general rule; and the only safe and reasonable rule is the market value here. [It is agreed by both parties that the goods should properly be delivered to the claimant in the bonded warehouse, and subject to the

bond to pay the duties or re-export the goods, that bond being a sufficient security for the duties within section 89 of the act of 1799, c. 22 (1 Stat. 696), if that section applies to this case. It probably does not apply; but the common law reaches the same conclusion, and requires the claimant to become bound in court for the full home value of the goods, besides remaining bound to the government for the duties. The application to bond is granted, but the appraisers are to be instructed to ascertain the true cash value of the tobacco in the market.] [3]

Bond to be given for full value.